# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| CELEBRITY OF SPRINGFIELD, LLC,<br><br>*Plaintiff,*<br><br>v.<br><br>THE UNITED STATES SMALL BUSINESS ADMINISTRATION; and ISABEL GUZMAN, in her official capacity as Administrator of the United States Small Business Administration,<br><br>*Defendants.* | Civil No. 2:23-CV-1720-WJM-CLW |

## MEMORANDUM OF LAW IN SUPPORT OF
## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Thomas A. Gentile, Esq. (TG-6939)
**Wilson Elser Moskowitz Edelman & Dicker LLP**
7 Giralda Farms
Madison, New Jersey 07940
Phone: (973) 735-5785
Fax: (973) 624-0808

*Attorneys for Plaintiff*
Celebrity of Springfield, LLC                                                        October 30, 2024

# **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ...................................................................................................1

STATUTORY BACKGROUND ...................................................................................................3

STATEMENT OF FACTS .............................................................................................................4

PROCEDURAL HISTORY............................................................................................................5

SUMMARY JUDGMENT STANDARD ......................................................................................5

ARGUMENT..................................................................................................................................6

      I.      UNDER LOPER BRIGHT, THIS COURT MUST EXERCISE ITS INDEPENDENT JUDGMENT RATHER THAN DEFER TO THE SBA'S FINAL DECISION......................................................................................................6

      II.     THE SBA'S FINAL DECISION IS INCOMPATIBLE WITH THE CARES ACT......................................................................................................................7

      III.    THE SBA'S FINAL DECISION CONTRAVENES THE SBA'S OWN REGULATIONS......................................................................................................9

CONCLUSION.............................................................................................................................11

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Burlington Truck Lines, Inc. v. U.S.*,
   371 U.S. 156 (1972) ............................................................................................................. 6

*Chevron U.S.A., Inc. v. NRDC, Inc.*,
   467 U.S. 837 (1984),
   *overruled by Loper Bright Enters. v. Raimondo*, 144 S. Ct. 2244 (2024) ............................. 1, 6

*Loper Bright Enters. v. Raimondo*,
   144 S. Ct. 2244 (2024) ................................................................................................ 1, 3, 6, 7

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*,
   463 U.S. 29 (1983) ............................................................................................................... 6

*Prometheus Radio Project v. FCC*,
   373 F.3d 372 (3d Cir. 2004) ................................................................................................ 6

*Serbin v. Bora Corp.*,
   96 F.3d 66 (3d Cir. 1996) .................................................................................................... 5

**Statutes**

5 U.S.C. § 706(2)(A) ................................................................................................................. 6

15 U.S.C. § 636(a)(36) ............................................................................................................. 3

15 U.S.C. § 636(a)(36)(B) ....................................................................................................... 3

15 U.S.C. § 636(a)(36)(F) ........................................................................................................ 3

15 U.S.C. § 636(a)(36)(G) ....................................................................................................... 3

15 U.S.C. § 636m ..................................................................................................................... 3

15 U.S.C. § 636m(a)(1) ........................................................................................................... 3

15 U.S.C. § 636m(a)(10) ......................................................................................................... 3

15 U.S.C. § 636m(b) ............................................................................................................ 3, 7

15 U.S.C. § 636m(d)(1) ........................................................................................................... 8

P.L. 116-136 .............................................................................................................. 2, 3, 7, 8, 9

P.L. 116-260............................................................................................................................3

**Rules**

85 Fed. Reg. § 33012 .......................................................................................................9, 10

Fed. R. Civ. P. § 56...................................................................................................1, 5, 6

Pursuant to Rule 56 of the Federal Rules of Civil Procedure ("Fed. R. Civ. P.") and all applicable Local Civil Rules of this Court, Plaintiff Celebrity of Springfield, LLC ("Celebrity"), by its undersigned attorneys WILSON ELSER MOSKOWITZ EDELMAN & DICKER LLP, hereby respectfully submits this Memorandum of Law in support of its motion for summary judgment.

## PRELIMINARY STATEMENT

"O brave new world, that has such people in it!"[1]  With the Supreme Court having overturned the *Chevron* doctrine,[2] this Court's role in adjudicating the appropriateness of agency actions has fundamentally transformed.  No longer are federal courts to defer to an agency's interpretation of a federal statute due to (supposed) statutory ambiguity.  Now, under the rule that the Supreme Court set forth just a few months ago in *Loper Bright Enters. v. Raimondo*, 144 S. Ct. 2244, 2273 (2024), federal courts are to exercise their own independent judgment (as the Administrative Procedure Act always intended) to determine whether an agency's action is permissible under the governing federal statute.  *Loper Bright* has thus restored to this Court the power to right wrongs wreaked by agencies that have overstepped their legal bounds.

This is a case of first impression in two important ways.  First, this is one of the very first cases in which a federal trial court is tasked with applying the new standard of *Loper Bright*. Second, regardless of any standard of deference, no court has yet ruled on the precise issue of statutory interpretation upon which the United States Small Business Administration ("SBA") relied when making the final decision that this Court now reviews.  Exercising its independent judgment under *Loper Bright*, this Court must reverse the SBA decision that is at issue, because

---

[1] Shakespeare, *The Tempest*, Act 5, Scene 1.

[2] *See Chevron U.S.A., Inc. v. NRDC, Inc.*, 467 U.S. 837 (1984), *overruled by Loper Bright Enters. v. Raimondo*, 144 S. Ct. 2244 (2024).

1

that decision is so detached from the applicable statutory mandate as to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.

This case concerns the forgiveness of loans under the Paycheck Protection Program ("PPP"), which came into being under the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), P.L. 116-136 (2020). PPP's purpose was straightforward: to facilitate loans to business so that workers would continue to receive their paychecks while the nation's economy was shut down due to the COVID-19 pandemic. The statute also provides for the forgiveness of such loans, so that employers who used such loan funds to keep workers employed (as Congress intended) could themselves withstand the pandemic's economic impact.

Celebrity (the plaintiff in this case) is one of an interrelated "corporate group" of New Jersey automobile dealerships ultimately owned by Tom Maoli. Under applicable regulations, the group was collectively subject to a $4,000,000 maximum of "second draw" PPP loans. At issue in this case is Celebrity's second draw PPP loan of $2,000,000, which inadvertently put the group $1,063,037 over the maximum (due to prior second draw loans by other entities within the group). When Celebrity applied for forgiveness, the SBA denied forgiveness of the $2,000,000 loan in its entirety, due to the group having gone over its maximum. As set forth herein, the proper course would have been for the SBA to deny forgiveness only as to the $1,063,037 of excess, while granting forgiveness as to the $936,963 portion that did not exceed the maximum.

As set forth herein, the SBA's final decision denying forgiveness as to the entirety of the $2,000,000 loan (rather than forgiving the $936,963 that is below the group maximum) is inconsistent with the text of the CARES Act, which anticipates forgiveness of amounts lower than the full principal amount. The SBA's final decision also directly contravenes the SBA's own regulations governing such an "excess loan amount error," which explicitly require partial

2

forgiveness when it is appropriate. As such, the SBA's final decision is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. Applying *Loper Bright*, this Court should reverse the SBA's final decision as an impermissible act of administrative policymaking.

## STATUTORY BACKGROUND

This case hinges upon interpretation of the CARES Act, which became law on March 27, 2020. *See* P.L. 116-136. In the CARES Act, Congress established the PPP, which facilitated and guaranteed loans that private lenders would make to eligible businesses. Congress intended and proscribed that the loaned funds would be used (*inter alia*) to retain workers and maintain payroll during the COVID-19 pandemic. *See* 15 U.S.C. §§ 636(a)(36)(F) and (G). Also in the CARES Act, Congress provided that PPP loans would be implemented using the preexisting structure of the SBA's Section 7 lending program, thereby placing the SBA in charge of the program's administration. *See* 15 U.S.C. § 636(a)(36)(B).

The CARES Act also statutorily provides for forgiveness of eligible PPP loans. *See* 15 U.S.C. § 636m. Specifically, 15 U.S.C. § 636m(b) provides that "[a]n eligible recipient shall be eligible for forgiveness of indebtedness on a covered loan in an amount equal to the sum" of certain payments, including payroll. In 15 U.S.C. § 636m(a)(10), Congress defined "eligible recipient" to mean "the recipient of a covered loan." In 15 U.S.C. § 636m(a)(1), Congress defined "covered loan" to mean "a loan guaranteed under section 636(a)(36) of this title."

In December of 2020, Congress passed the Economic Aid to Hard-Hit Small Businesses, Nonprofits, and Venues Act, see P.L. 116-260, in which Congress authorized the SBA to guarantee PPP second draw loans to eligible businesses.

**STATEMENT OF FACTS**

Celebrity is a New Jersey limited liability company that is part of a network of several interrelated New Jersey automobile dealerships, ultimately owned by Tom Maoli. Due to this structure, Celebrity is one of a "corporate group" of entities that (as a group) was eligible for $4,000,000 in PPP second draw loans. On March 2, 2021, Celebrity applied to its lender, Valley National Bank ("Valley"), for a second draw loan of $2,000,000. *See* AR9 at 4215-4222. On March 3, 2021, Valley disbursed to Celebrity a second draw loan in the amount of $2,000,000.

When Celebrity applied for (and received) the second draw loan of $2,000,000, the corporate group (of which Celebrity is part) had already taken out $3,063,037 in second draw loans. Celebrity's second draw loan of $2,000,000 thus put the corporate group $1,063,037 over its $4,000,000 maximum. There is no evidence anywhere in the record suggesting that the corporate group exceeded the maximum other than through an inadvertent error. (Indeed, that inadvertent error was on the part of Valley, which processed the loan despite being fully aware of the status of such loans taken out across the corporate group).

On January 12, 2022, Celebrity submitted a PPP Loan Forgiveness Application Form (3508EZ), seeking forgiveness of its $2,000,000 second draw loan. *See* CelebAR004255-4259. Celebrity provided various required documentation, including documentation related to payroll. *See* CelebAR0042520-004238. There is no dispute in this litigation that Celebrity made use of the $2,000,000 exactly as Congress intended (specifically including, to maintain payroll so that workers could continue to receive their paychecks during the COVID-19 pandemic).

On September 1, 2022, the SBA issued a final loan review decision, which denied forgiveness of Celebrity's $2,000,000 second draw loan, **in its entirety**. *See* CelebAR004262-4263. In that final loan review decision, the SBA stated as follows:

4

> SBA has determined that the borrower was ineligible for the PPP loan amount received. The reason(s) for SBA's decision is as follows: After a review of the documentation provided, the SBA concludes that the Borrower business which is part of a corporate group has received more than $4,000,000 of 2nd draw PPP loans in the aggregate. Maoli et al is a "family" of 5 entities defined by 100% direct ownership and management control of Thomas Maoli (individual), as disclosed and attested to on borrowers 3511 and Schedule A Addendums. The family group has a total of 4 second draw loans totaling $5,063,137 in aggregate, which exceeds the $4,000,000 corporate maximum by $1,063,037. Therefore its 4th second draw loan, #5886528506 disbursed on 3/3/21 for $2,000,000, is Ineligible.

*See* CelebAR004262.

## PROCEDURAL HISTORY

On September 15, 2022, Celebrity appealed the SBA's final loan review decision to the SBA's Office of Hearings and Appeals ("OHA"). *See* CelebAR004260-4261; CelebAR004298-4299. Celebrity argued to the OHA that the SBA should have denied forgiveness **only** as to the $1,063,037 that exceeded the corporate maximum, while granting forgiveness as to the remaining $936,963. *See* CelebAR004261. The OHA issued a decision that upheld the earlier final loan review decision, stating that the SBA would **not** forgive the $936,963 portion of the $2,000,000 loan, even though that $936,963 portion was **not** in excess of the corporate group's $4,000,000 maximum. *See* CelebAR004308-4319. The OHA's decision is now the final decision of the SBA.

With the SBA's final decision, Celebrity had exhausted all administrative remedies. Celebrity commenced this action under the Administrative Procedure Act ("APA") to set aside the SBA's denial of forgiveness of the $936,963 portion (which denial Celebrity maintains is unlawful); and to compel the SBA to grant forgiveness as to that $936,963 portion.

## SUMMARY JUDGMENT STANDARD

Under Fed. R. Civ. P. 56, summary judgment is to be granted when the evidence in the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Serbin v. Bora Corp.*, 96 F.3d 66, 69 n.2 (3d Cir. 1996).

5

With specific regard to motions for summary judgment in cases under the APA, a court can set aside an agency decision if the agency's decision was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Prometheus Radio Project v. FCC*, 373 F.3d 372, 389 (3d Cir. 2004) (quoting 5 U.S.C. § 706(2)(A)). In doing so, a reviewing court is to determine whether "the agency examined the relevant data and articulated a satisfactory explanation for its action, including a rational connection between the facts found and the choice made." *Prometheus* at 389-90, quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (quoting *Burlington Truck Lines, Inc. v. U.S.*, 371 U.S. 156, 168 (1972) (internal quotation omitted).

## ARGUMENT

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, this Court should grant Celebrity's motion for summary judgment in its entirety; and order the SBA to effectuate forgiveness of the $936,963.00 portion of the second draw loan that did not exceed the $4,000,000 maximum for the corporate group of which Celebrity is part.

### I.

### UNDER *LOPER BRIGHT*, THIS COURT MUST EXERCISE ITS INDEPENDENT JUDGMENT RATHER THAN DEFER TO THE SBA'S FINAL DECISION.

The Supreme Court's (very) recent decision in *Loper Bright* has radically transformed this Court's role in determining whether the SBA acted lawfully when it denied forgiveness of the entirety of Celebrity's second draw loan. For four decades, the *Chevron* doctrine required courts to defer to agency interpretations of federal statutes in cases of supposed statutory ambiguity. Now, with *Chevron* overturned, "courts need not and under the APA may not defer to an agency interpretation of the law simply because a statute is ambiguous." *Loper Bright*, 630 U.S. at 2273. Recognizing that "*Chevron*'s fictional presumption of congressional intent was

6

always unmoored from the APA's demand that courts exercise independent judgment in construing statutes administered by agencies," the Supreme Court in *Loper Bright* held that henceforth "[c]ourts must exercise their independent judgment in deciding whether an agency has acted within its statutory authority, as the APA requires." *Id*. Applying the new standard set forth in *Loper Bright* to this case, this Court must reverse the SBA's final decision denying forgiveness of the entirety of Celebrity's second draw loan, as arbitrary, capricious, an abuse of discretion, and/or otherwise not in accordance with law.

## II.

### THE SBA'S FINAL DECISION IS INCOMPATIBLE WITH THE CARES ACT.

In *Loper Bright*, Chief Justice Roberts was explicit that "the question that matters" is "[d]oes the statute authorize the challenged agency action?" 630 U.S. at 2252. There is nothing in the text of the CARES Act that remotely suggests the outcome set forth in the SBA's final decision. Rather, the CARES Act's provisions concerning forgiveness make it clear that the SBA's final decision contravenes and undermines the statute's mandate.

First, 15 U.S.C. § 636m(b) provides (in part) that "[a]n eligible recipient shall be eligible for forgiveness of indebtedness on a covered loan in an amount equal to the sum of the following costs incurred and payments made during the covered period: (1) Payroll costs …". The fundamental purpose of the CARES Act (and its forgiveness provisions) was to provide businesses with funds to continue to maintain payroll during the COVID-19 pandemic, rather than lay off workers due to those businesses being shuttered. The SBA's final decision — which denies forgiveness of the entirety of a loan that puts the corporate group over its maximum, rather than denying forgiveness of only the portion that exceeds that maximum — means that amounts of loans that were used to protect workers' paychecks will go unforgiven, all because of

7

an inadvertent clerical error. This defies blatantly the CARES Act's statutory mandate of ensuring the continuation of payroll in the face of the COVID-19 pandemic.

Second, 15 U.S.C. § 636m(d)(1) provides that "the amount of loan forgiveness under this section shall not exceed the principal amount of the financing made available under the applicable covered loan." This provision (of course) sets the amount of principal as the upper limit of forgiveness; but it also suggests that various circumstances will allow for forgiveness of various amounts up to the amount of principal, as appropriate. The SBA's notion that a loan that puts a corporate group over its maximum must be denied in its entirety is incompatible with this provision's implication that loans can be forgiven in various amounts up to the principal amount. This statutory provision is wholly incompatible with the SBA's all-or-nothing approach.[3]

Inherent in the SBA's final decision is the possibility of absurd results that are wholly inconsistent with the CARES Act's mandate. Consider the situation of a borrower who takes out a second-draw loan in a large amount (say, $2,000,000), thereby causing that borrower's corporate group to (inadvertently) exceed the corporate maximum by a small amount (say, ten dollars). Under the SBA's final decision, that excess of a mere ten dollars requires denial of forgiveness of the entire $2,000,000 of the borrower's second-draw loan. In such a case, the SBA's final decision would **require** that the $1,999,990 below the group maximum, which was used (wholly legally) to maintain workers' paychecks during the pandemic, go unforgiven. Such a result (just like the SBA's final decision in this case) defies the CARES Act's mandate.

---

[3] The SBA's own forms, used as part of the documentation of the $2,000,000 second draw loan between Celebrity and Valley, contain similar language. The section of SBA Form 147 (entitled "Loan Forgiveness") that is incorporated into those loan documents provides that "Borrower further agrees, acknowledges and understands that the forgiveness amount may be less that the full principal amount." CelebAR000052. This contractually binding language evinces an intent among Celebrity, the lender (Valley) and the SBA that under certain circumstances, the loan would be forgiven in partial amounts up to the amount of principal, as appropriate.

8

## III.

## THE SBA'S FINAL DECISION CONTRAVENES THE SBA'S OWN REGULATIONS

The very regulations that the SBA itself promulgated to effectuate the CARES Act establish that the SBA's denial of forgiveness as to the entirety of Celebrity's second draw loan (as opposed to partial forgiveness) is wholly unauthorized under the staute. Indeed, as set forth herein, the SBA's final decision stands in direct contravention of the SBA's own regulations.

Specifically, the subject corporate group's having received $1,063,037 more than the corporate maximum of $4,000,000 constitutes an "excess loan amount error" (specifically, a borrower error made in good faith) as defined under applicable regulations. Such applicable regulations provide that the appropriate decision as to the subject loan forgiveness application would be for the SBA to direct the lender to deny loan forgiveness *only* as to that part of the loan ($1,063,037) that exceeds the $4,000,000 corporate maximum. It is not appropriate for SBA to direct denial of forgiveness of the full $2,000,000. The $936,963 portion that did not exceed the $4,000,000 corporate maximum should be forgiven.

85 Fed. Reg. 33012 sets forth a regulation that addresses the question, "If SBA determines that a borrower is ineligible for a PPP loan, can the loan be forgiven?" 85 Fed. Reg. 33012's answer to this question reads (in relevant part) as follows:

> [I]f SBA determines that the borrower is ineligible for the loan amount or loan forgiveness amount claimed by the borrower, **SBA will direct the lender** to deny the loan forgiveness application **in whole or <u>in part, as appropriate</u>**.

(Emphasis added). Significantly, this regulation's language that "SBA **will** direct the lender" (emphasis added) is mandatory, thereby **requiring** the SBA to grant partial forgiveness in cases (such as this case) in which partial forgiveness is "appropriate."

9

The requirement of partial forgiveness is further set forth in SBA Procedural Notice Control No. 5000-20078 (effective January 15, 2021), the Subject of which is "Paycheck Protection Program Excess Loan Amount Errors." CelebAR000010-13. Applying the same reasoning as 85 Fed. Reg. 33012, this Notice states unequivocally that "[i]f the lender or SBA, as applicable, determines a borrower was ineligible for any portion of its loan amount, **forgiveness will be denied for the ineligible portion** and the borrower must begin making payments on the remaining loan amount" (Emphasis added). CelebAR000012. The language of this Notice (just like the language of 85 Fed. Reg. 33012) is mandatory, thereby **requiring** the SBA to grant partial forgiveness in this case. Yet in this case, the SBA flat-out ignored its own regulations.

Under the foregoing regulations, the only "appropriate" course of action would have been for SBA to deny loan forgiveness only "for the ineligible portion." Specifically, SBA should have denied forgiveness *only* as to the $1,063,037 portion of Celebrity's second draw loan that exceeded the corporate maximum, while granting forgiveness as to the remaining $936,963.

## CONCLUSION

For all of the foregoing reasons, this Honorable Court should grant in its entirety the foregoing motion for summary judgment of Plaintiff Celebrity of Springfield, LLC.; and order that the SBA must grant forgiveness as to the $936,963 portion of Celebrity's second draw loan that did not exceed the $4,000,000 maximum for the corporate group of which Celebrity is part.

Respectfully submitted,

**WILSON ELSER MOSKOWITZ EDELMAN & DICKER LLP**

By: _____/s/ Thomas A. Gentile_____
THOMAS A. GENTILE

Thomas A. Gentile (TG-6939)
*An Attorney Admitted to Practice before this Honorable Court*

7 Giralda Farms
Madison, New Jersey 07940
Phone: (973) 735-5785
Fax: (973) 624-0808

*Attorneys for Plaintiff*
Celebrity of Springfield, LLC

Dated: October 30, 2024