PHILIP R. SELLINGER
United States Attorney
MATTHEW J. MAILLOUX
Assistant United States Attorney
United States Attorney's Office
970 Broad Street, Suite 700
Newark, NJ 07102
Tel.:   (973) 645-2837
Email: Matthew.Mailloux@usdoj.gov

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| CELEBRITY OF SPRINGFIELD, LLC, | HON. WILLIAM J. MARTINI |
| *Plaintiff,* | |
| v. | Civ. No. 2:23-cv-01720(WJM)(CLW) |
| UNITED STATES SMALL BUSINESS ADMINISTRATION, *et al.,* | |
| *Defendants.* | |

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR CROSS-MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT

PHILIP R. SELLINGER
UNITED STATES ATTORNEY
*Attorney for Defendants*

MATTHEW J. MAILLOUX
Assistant United States Attorney

**Table of Contents**

Preliminary Statement ................................................................................................ 1

Background ................................................................................................................ 2

   I. The SBA's Statutory and Legal Framework ...................................................... 2

     A. The SBA's Paycheck Protection Program ................................................... 2

     B. SBA's Section 7(a) Loan Program ............................................................. 5

     C. The Corporate Group Rule with a $20 million Limit for First Draw Loans ........ 6

     D. The Economic Aid Act ............................................................................. 7

     E. The Corporate Group Limit of $4 Million for Second Draw Loans ..................... 9

     F. PPP Loan Forgiveness .............................................................................. 10

   II. Celebrity's PPP Loan Applications and Procedural History ................................. 11

Standard Of Review .................................................................................................... 15

   I. Summary Judgment Standard ........................................................................... 15

   II. APA Standard of Review ................................................................................. 17

Argument – The SBA Did Not Act Arbitrarily When It Denied Plaintiff's
Application for Loan Forgiveness by Applying the Corporate Group Rule to
Plaintiff's Loan Application That Exceeded the Threshold ............................................ 18

   I. The Administrative Law Judge Acted Reasonably by Denying Plaintiff's
Forgiveness Application for Its Loan that Exceeded the Threshold .......................... 18

   II. Plaintiff's Proposed Relief Is Not Supported By the Statutory Framework or
the APA .............................................................................................................. 20

Conclusion ................................................................................................................ 24

# Table of Authorities

## *Cases*

*Am. Bioscience, Inc. v. Thompson,*
   269 F.3d 1077 (D.C. Cir. 2001) ........................................................................ 16

*Ass'n of Priv. Sector Colls. & Univs. v. Duncan,*
   110 F. Supp. 3d 176 (D.D.C. 2015) ................................................................. 22

*Bowman Transp., Inc. v. Ark.-Best Motor Freight System, Inc.,*
   419 U.S. 281 (1974) .......................................................................................... 17

*Camp v. Pitts,*
   411 U.S. 138 (1973) .......................................................................................... 16

*Chappell v. Wallace,*
   462 U.S. 296 (1983) .......................................................................................... 17

*Citizens to Preserve Overton Park, Inc. v. Volpe,*
   401 U.S. 402 (1971) .......................................................................................... 17

*Conference v. Vilsack,*
   684 F. Supp. 2d 135 (D.D.C. 2010) ................................................................. 16

*Dibble v. Fenimore,*
   545 F.3d 208 (2d Cir. 2008)............................................................................. 17

*DSE, Inc. v. United States,*
   169 F.3d 21 (D.C. Cir. 1999) ............................................................................. 5

*Fla. Power & Light Co. v. Lorion,*
   470 U.S. 729 (1985) .......................................................................................... 16

*Gordon Coll. v. U.S. Small Bus. Admin.,*
   No. 23-cv-614, 2024 WL 3471261 (D.D.C. July 18, 2024)........................3, 11

*In re Gateway Radiology Consultants, P.A.,*
   983 F.3d 1239 (11th Cir. 2020) ....................................................................3, 5, 21

*James Madison Ltd. by Hecht v. Ludwig,*
   82 F.3d 1085, 1096 (D.C. Cir. 1996) ............................................................... 16

*Karpova v. Snow,*
   497 F.3d 262 (2d Cir. 2007)...........................................................................17, 18

*Keystone-Conemaugh Projects LLC v. United States Environ. Protection Agency,*
100 F.4th 434 (3d Cir. 2024) ........................................................................ 24

*Marshall Cnty. Health Care Auth. v. Shalala,*
988 F.2d 1221 (D.C. Cir. 1993) .................................................................... 16

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.,*
463 U.S. 29 (1983) .................................................................................17, 23

*Sierra Club v. Mainella,*
459 F. Supp. 2d 76 (D.D.C. 2006) ............................................................... 16

*Springfield Hosp., Inc. v. Guzman,*
28 F.4th 403 (2d Cir. 2022) ......................................................................... 23

*Town of Southold v. Wheeler,*
48 F.4th 67 (2d Cir. 2022) .......................................................................17, 18

*Univ. Med. Ctr v. Shalala,*
173 F.3d 438 (D.C. Cir. 1999) ..................................................................... 16

## **Statutes**

5 U.S.C. § 706(2)(A) .................................................................................... 17

15 U.S.C. § 632(a)(1) ..................................................................................... 5

15 U.S.C. § 632(a)(2)(A) ................................................................................ 5

15 U.S.C. § 634(b)(6) ..................................................................................... 5

15 U.S.C. § 634(b)(7) ..................................................................................... 5

15 U.S.C. § 636(a) .......................................................................................... 5

15 U.S.C. § 636(a)(36) ................................................................................... 3

15 U.S.C. § 636(a)(36)(A)(ii)–(iii) ................................................................ 4

15 U.S.C. § 636(a)(36)(B) .......................................................................... 3, 7

15 U.S.C. § 636(a)(36)(D)–(W) ..................................................................... 3

15 U.S.C. § 636(a)(36)(E) .............................................................................. 8

15 U.S.C. § 636(a)(36)(F)(ii) ......................................................................... 3

15 U.S.C. § 636(a)(36)(F)(ii)(I) ..................................................................... 4

15 U.S.C. § 636(a)(36)(F)(iii) .................................................................... 4

15 U.S.C. § 636(a)(36)(V) ........................................................................ 8

15 U.S.C. § 636(a)(37) .............................................................................. 8

15 U.S.C. § 636(a)(37)(B) ........................................................................ 8

15 U.S.C. § 636(a)(37)(C) ........................................................................ 8

15 U.S.C. § 636(a)(37)(C)(iv) .................................................................. 8

15 U.S.C. § 636(a)(37)(E) ........................................................................ 8

15 U.S.C. § 636(a)(37)(J)(ii) .................................................................. 10

15 U.S.C. § 636m(b) ............................................................................... 10

15 U.S.C. § 636m(c)(3) .......................................................................... 11

15 U.S.C. § 636m(d)(1) .......................................................................... 10

15 U.S.C. § 636m(g) .............................................................................. 10

15 U.S.C. § 9012 ..................................................................................... 3

Pub. L. No. 116-136, 134 Stat. 281 (2020) ...................................... 2, 6

Pub. L. No. 116-139, § 101(a)(1), 134 Stat. 620 (2020) ...................... 4

Pub. L. No. 116-147, 134 Stat. 660 ...................................................... 7

Pub. L. No. 116-260, 134 Stat. 1182, 1993–2052) (Dec. 27, 2020) ...... 7

Pub. L. No. 117-2, § 5001(d)(1), 135 Stat. 4 .................................. 9, 21

CARES Act § 1102(b)(1) .......................................................................... 4

## *Rules*

Fed. R. Civ. P. 56(c) .............................................................................. 16

## *Regulations*

13 C.F.R. § 120.100(d) ............................................................................ 5

13 C.F.R. § 121.201 ................................................................................................... 5

13 C.F.R. § 121.103 ................................................................................................... 6

13 C.F.R. § 121.301(f) ............................................................................................... 6

85 Fed. Reg. 3692 ................................................................................................. 9, 21

85 Fed. Reg. 3702 ........................................................................................... 9, 10, 22

85 Fed. Reg. 3712 ................................................................................................. 9, 21

86 Fed. Reg. 3713 ...................................................................................................... 9

85 Fed. Reg. 3716 ......................................................................................... 9, 20, 21

86 Fed. Reg. 8,283 ................................................................................................... 10

86 Fed. Reg. 8,285 ................................................................................................... 11

86 Fed. Reg. 8,287–88 ............................................................................................ 10

86 Fed. Reg. 8,288 ................................................................................................... 11

85 Fed. Reg. 20,811 ................................................................................................... 2

85 Fed. Reg. 20,811–12 ............................................................................................. 2

85 Fed. Reg. 20,812 ................................................................................................... 4

85 Fed. Reg. 20,814 ................................................................................................... 4

85 Fed. Reg. 20,814–16 ............................................................................................. 4

88 Fed. Reg. 21074 ................................................................................................... 6

85 Fed. Reg. 26,324 ................................................................................................... 6

85 Fed. Reg. 26,325 ............................................................................................... 6, 7

85 Fed. Reg. 33012 ........................................................................................... passim

85 Fed. Reg. 80581 ................................................................................................... 6

<u>PRELIMINARY STATEMENT</u>

The Court should grant the cross-motion for summary judgment filed by Defendants the United States Small Business Administration ("SBA") and Isabel Guzman, in her official capacity as Administrator of the SBA, and deny the cross-motion filed by Plaintiff Celebrity of Springfield, LLC ("Celebrity"). As set out more fully below, the SBA was not arbitrary and capricious when it denied Celebrity's forgiveness application for its second draw Paycheck Protection Program loan because that loan exceeded the SBA's cap.

During the height of the COVID-19 national emergency, Congress tasked SBA with implementing a loan program to provide emergency financial assistance to millions of American businesses and individuals. To meet this unprecedented challenge, the SBA created a highly streamlined process, tasking borrowers with heightened certification responsibilities to assure compliance with applicable guidelines and regulations. At issue here is the SBA's decision to deny forgiveness to Plaintiff's loan because it exceeded the $4 million limitation that SBA set for second draw Paycheck Protection Program loans made to corporate groups. The parties agree Plaintiff applied for and received four loans that would have exceeded the threshold, though Plaintiff asserts that it either did not know about the cap, or mistakenly exceeded it.

SBA denied Plaintiff's application to forgive its unauthorized loan because it exceeded the $4,000,000 threshold, and the loan application as submitted was not eligible in the first instance because it exceeded that threshold. Plaintiff now seeks

to have SBA forgive that portion of the loan for which Plaintiff could have applied, had Plaintiff properly submitted a loan application below the threshold amount. Plaintiff's argument that discrete language in the regulations could support such approach is unpersuasive. Plaintiff's suggestion ignores the statutory framework of the program and would dramatically shift the certification and review responsibilities onto the SBA. The SBA administrative law judge reasonably upheld the decision to deny Plaintiff's application for loan forgiveness. Accordingly, Plaintiff fails to meet its burden to demonstrate the SBA acted in an arbitrary and capricious manner and the Court should enter summary judgment in Defendants' favor, deny Plaintiff's motion for summary judgment, and dismiss Plaintiff's complaint in its entirety.

<u>BACKGROUND</u>

I.    <u>The SBA's Statutory and Legal Framework</u>

A.    <u>The SBA's Paycheck Protection Program</u>

In the midst of the COVID-19 national emergency, in March 2020, Congress passed the CARES Act, Pub. L. No. 116-136, 134 Stat. 281 (2020), to provide emergency assistance to individuals, families, businesses, and health-care providers coping with the coronavirus pandemic. *See* Business Loan Program Temporary Changes; paycheck protection Program, 85 Fed. Reg. 20,811, 20,811–12 (Apr. 15, 2020). One of the Act's many measures was the Paycheck Protection Program ("PPP"), CARES Act § 1102, which extended financial relief to small businesses experiencing economic hardship due to the pandemic. *See id.*

CARES Act § 1102(a)(2) temporarily expanded SBA's business-loan authority by adding a new paragraph to the SBA's longstanding general purpose loan framework, § 7(a), 15 U.S.C. § 636(a)(36). *See In re Gateway Radiology Consultants, P.A.*, 983 F.3d 1239, 1249 (11th Cir. 2020) ("[T]he PPP was not created as a standalone program; instead it was added into § 7(a)[.]"); *accord Gordon Coll. v. U.S. Small Bus. Admin.*, No. 23-cv-614, 2024 WL 3471261, at *2 (D.D.C. July 18, 2024). Section 636(a)(36)(B) states that "[e]xcept as otherwise provided in [section 636(a)(36)], the [SBA] *may* guarantee [PPP] loans," issued by private lenders, "under the same terms, conditions, and processes as [other] loan[s] made under" § 7(a). 15 U.S.C. § 636(a)(36)(B) (*emphasis* added); *see id.* § 636(a)(36)(F)(ii). The statute then detailed the ways in which PPP loans would differ from other § 7(a) loans. *Id.* § 636(a)(36)(D)–(W).

Congress initially authorized SBA to guarantee up to $349 billion in PPP loans by June 30, 2020. CARES Act § 1102(b)(1); 15 U.S.C. § 636(a)(36)(A)(ii)–(iii), (B). To ensure that SBA could make such an enormous sum available to small businesses in such a short timeframe, Congress instructed SBA to issue rules implementing the PPP "[n]ot later than 15 days after" the CARES Act's enactment, 15 U.S.C. § 9012, described as "warp speed for regulatory action," *In re Gateway Radiology Consultants*, 983 F.3d at 1262. To make that feat possible, Congress instructed SBA to issue these rules without regard to APA notice-and-comment procedures. 15 U.S.C. § 9012 (citing 5 U.S.C. § 553(b)). Congress also directed that SBA allow additional non-§ 7(a) lenders to participate in the PPP and mandated that the SBA give all PPP lenders

"delegated authority" to make and approve PPP loans without prior SBA review. *Id.* § 636(a)(36)(F)(ii)(I), (iii).

The SBA launched the PPP on April 3, 2020. SBA Press Release No. 20-30.[1] In light of Congress's clear intent and the needs of small businesses for immediate assistance, the SBA also established a highly streamlined PPP loan-origination process based on borrower self-certifications of eligibility. See 85 Fed. Reg. at 20,812, 20,814–16; CelebAR004239. Because borrowers' applications and supporting documentation were maintained by lenders, not sent to the SBA, see 85 Fed. Reg. at 20,814, the SBA did not (and as a practical matter could not) make independent determinations regarding borrower eligibility or compliance with program rules at the loan-origination stage.

Although the program's termination date was June 30, 2020, the demand for PPP financing was so great that the entire $349 billion authorized by Congress was exhausted in less than two weeks' time, by April 16, 2020. *Compare* CARES Act § 1102(b) *with* SBA Press Release No. 20-32.[2] Congress authorized another $310 billion in PPP loans on April 24, 2020. See Paycheck Protection Program and Health Care Enhancement Act, Pub. L. No. 116-139, § 101(a)(1), 134 Stat. 620 (2020).

---

[1]     Available at: https://www.sba.gov/article/2020/apr/03/sbas-paycheck-protection-program-smallbusinesses-affected-coronavirus-pandemic-launches. (last visited October 25, 2024).

[2]     Available at: https://www.sba.gov/article/2020/apr/16/statement-secretary-mnuchin-administrator-carranza-paycheck-protection-program-economic-injury. (last visited October 25, 2024).

B.  SBA's Section 7(a) Loan Program

As background, section 7(a) of the Small Business Act ("§ 7(a)") "empower[s]" SBA to guarantee general purpose loans to small businesses. 15 U.S.C. § 636(a). Typically, SBA guarantees loans by private lenders rather than disbursing funds directly. *See In re Gateway Radiology Consultants, P.A.*, 983 F.3d 1239, 1248 (11th Cir. 2020). The Small Business Act also broadly authorizes SBA to "make such rules and regulations" as the agency "deems necessary" to implement the loan program, and to "take any and all actions" the agency "determines . . . are necessary or desirable in making, servicing, compromising, modifying, liquidating, or otherwise dealing with or realizing on loans[.]" 15 U.S.C. §§ 634(b)(6), (b)(7).

Ordinarily, to qualify for a § 7(a) loan, an applicant must meet the size standards for a "small" business set forth in the Act and SBA regulations. 15 U.S.C. § 632(a)(1), (2)(A); 13 C.F.R. §§ 120.100(d), 121.201. The Small Business Act "grants the SBA broad authority to craft general criteria for establishing which entities qualify as small business concerns, as well as to make particularized size assessments." *DSE, Inc. v. United States*, 169 F.3d 21, 25 (D.C. Cir. 1999). Those criteria include "affiliation rules" that determine when an applicant is affiliated with another entity, such that the SBA should properly regard the two entities as a single, larger entity (in terms of number of employees or revenue) for the purpose of

determining whether the applicant qualifies as an eligible "small" business. *See* 13 C.F.R. §§ 121.103; 121.301(f).[3]

C.    The Corporate Group Rule with a $20 million Limit for First Draw Loans

On May 4, 2020, SBA published the Corporate Group Rule. Business Loan Program Temporary Changes; Paycheck Protection Program—Requirements—Corporate Groups and Non-Bank and Non-Insured Depository Institution Lenders, 85 Fed. Reg. 26,324 (May 4, 2020). Under the Rule, "businesses that are part of a single corporate group shall in no event receive more than $20,000,000 of PPP loans in the aggregate." *Id.* at 26,325. The Rule defined a "corporate group" as businesses "owned, directly or indirectly, by a common parent." *Id.* The Rule advised borrowers that loans received in disregard of its terms "will not be eligible for forgiveness." *Id.*

SBA explained the Rule sought to "preserve the limited resources available to the PPP . . . in light of the previous lapse of PPP appropriations and the high demand for PPP loans[.]" *Id.* SBA "determined that limiting the amount of PPP loans that a single corporate group may receive [would] promote the availability of PPP loans to

---

[3]    SBA revised its affiliation rules in early 2020, but those revisions were rescinded by the CARES Act. *See* CARES Act § 1102(e), 134 Stat 281, 294; *see also* Express Loan Programs; Affiliation Standards – Rescission, 85 Fed. Reg. 80581, 80581 (Dec. 14, 2020). The version of the affiliation rules that appears in the 2020 edition of the Code of Federal Regulations (available at: https://www.govinfo.gov/content/pkg/CFR-2020-title13-vol1/pdf/CFR-2020-title13-vol1.pdf) (last viewed: October 28, 2024) remained in effect during the Paycheck Protection Program. The SBA significantly revised its affiliation rules again in 2023, after the PPP ended. *See* Affiliation and Lending Criteria for the SBA Business Loan Program, 88 Fed. Reg. 21074. The revised affiliation rules are not at issue in this case.

the largest possible number of borrowers, consistent with the CARES Act." *Id.* SBA concluded that it had authority to issue an "aggregate limitation" on the amount of PPP loans issued to a single corporate group, because the terms of the CARES Act "specify a 'maximum'—but not a minimum—loan amount" for each borrower that SBA "may" guarantee. *Id.* at n.1 (citing 15 U.S.C. § 636(a)(36)(B), (E)).

SBA noted that its "affiliation rules, which relate to an applicant's *eligibility* for PPP loans" as well as "any waiver of those rules under the CARES Act" would "continue to apply *independent* of this [aggregate] limitation." *Id.* at 26,325 (*emphasis* added). Conversely, applicants were subject to the Corporate Group Rule "even if the businesses are eligible for the waiver-of affiliation provision under the CARES Act or are otherwise not considered to be affiliates under SBA's affiliation rules." *Id.* In other words, the Rule applied to all eligible borrowers, regardless of whether SBA considered affiliation in determining those borrowers' eligibility to participate in the program.

    D. <u>The Economic Aid Act</u>

The PPP expired on August 8, 2020, *see* Act of July 4, 2020, Pub. L. No. 116-147, 134 Stat. 660, but the Economic Aid to Hard-Hit Small Businesses, Nonprofits, and Venues Act (Consolidated Appropriations Act, 2021, Div. N, Title III, Pub. L. No. 116-260, 134 Stat. 1182, 1993–2052) (Dec. 27, 2020)) (the "Economic Aid Act," or "EAA"), reauthorized and extended the program to March 31, 2021, and added another $147.5 billion in loan authority. EAA § 323(a)(1).

The EAA made changes concerning eligibility and uses of loan proceeds,[4] and prescribed a "maximum loan amount" calculation for PPP loans issued to farmers and ranchers, similar to the payroll-based formula under § 636(a)(36)(E). *Id.* § 313(a)(2) (adding 15 U.S.C. § 636(a)(36)(V)). The EAA also added a new section to the § 7(a) program, 15 U.S.C. § 636(a)(37), which authorized SBA to guarantee so-called "second-draw" PPP loans to certain businesses that had already received "first-draw" PPP loans under the CARES Act, EAA § 311(a), under the same terms and conditions as first-draw loans, except as the EAA otherwise provided. 15 U.S.C. § 636(a)(37)(B). The EAA established a "[m]aximum loan amount" for second-draw loans based on the CARES Act's payroll-based formula for first-draw loans, but with a smaller cap of $2,000,000. *Id.* § 636(a)(37)(C). For NAICS code 72 businesses, the EAA increased the multiplier for the payroll-based formula from 2.5 to 3.5, subject to the $2,000,000 cap. *Id.* § 636(a)(37)(C)(iv). The EAA also specified that the Affiliation Waiver applicable to first-draw loans would also apply to second-draw PPP loans, "for purposes of determining eligibility[,]" though it lowered the number of employees a NAICS Code 72 business could have while qualifying for the Waiver, from 500 to 300 employees. *Id.* § 636(a)(37)(E). The EAA also required eligible borrowers to "have experienced a revenue reduction of 25% or greater in 2020 relative to 2019." 86 Fed. Reg. at 3723.

---

[4]    *See* EAA § 304(a), (b)(2) (adding to the permissible uses of loan proceeds); *id.* § 310 (clarifying and adding to limitations on borrower eligibility); *id.* §§ 316–18 (extending eligibility to housing cooperatives, news organizations, and destination marketing organizations; *id.* § 319 (prohibiting use of loan proceeds for lobbying activities).

Like the CARES Act, the EAA gave SBA "emergency rulemaking authority" and directed SBA to issue regulations implementing the EAA "[n]ot later than 10 days after" the EAA's enactment, without regard to the notice-and-comment requirements of § 553(b). EAA § 303. Ultimately Congress authorized SBA to guarantee more than $813 billion in PPP loans, American Rescue Plan Act of 2021, Pub. L. No. 117-2, § 5001(d)(1), 135 Stat. 4, and nearly 12 million PPP loans were approved.

    E.   The Corporate Group Limit of $4 Million for Second Draw Loans

After Congress passed the EAA, SBA extended the Corporate Group Rule to second draw loans to "promote the availability of PPP loans to the largest possible number of borrowers[.]" Business Loan Program Temporary Changes; Paycheck Protection Program Second Draw Loans, 86 Fed. Reg. 3712, 3716 (Jan. 14. 2021). Consistent with the lower maximum individual loan amount authorized by the EAA for second-draw loans, SBA capped the total amount a single corporate group could receive in second-draw loans at $4,000,000. *Id.* at 3716, 3720.

Under the Corporate Group Rule, PPP applicants were responsible for notifying lenders "if the applicant has applied for or received PPP loans in excess of the amount permitted" by the Rule and for withdrawing or requesting cancellation "of any pending PPP loan application or approved PPP loan not in compliance with the limitation set forth in this rule." Business Loan Program Temporary Changes; Paycheck Protection Program as Amended by Economic Aid Act, 86 Fed. Reg. 3692, 3702 (Jan. 14, 2021); *see also* 86 Fed. Reg. at 3713 (specifying that second-draw loans

are subject SBA's consolidated interim final rule for first-draw loans unless otherwise specified).

Notably, a borrower's failure to notify the lender if it "applied for or received PPP loans in excess of the amount" to "withdraw or request cancellation of any pending PPP loan application or approved PPP loan not in compliance" would "be regarded as a use of PPP funds for unauthorized purposes, and the loan [would] not be eligible for forgiveness." 86 Fed. Reg. at 3702.

F.  PPP Loan Forgiveness

CARES Act § 1106 provides for the forgiveness of PPP loans. It provides that "[a]n eligible recipient [of a PPP loan] shall be eligible for forgiveness . . . in an amount equal to the sum of" its covered payroll costs and other allowable expenses, 15 U.S.C. § 636m(b), but not to exceed the principal amount of the loan, *id.* § 636m(d)(1). Except as otherwise provided by the EAA, eligible recipients of second-draw loans are eligible for forgiveness "in in the same manner as an eligible recipient" of a first draw loan. *Id.* § 636(a)(37)(J)(ii).

To obtain forgiveness, an eligible borrower (here, Celebrity) submits an application and supporting documentation to its lender, which determines if the borrower is entitled to forgiveness under the Act, and, if so, submits a request for payment to SBA. 15 U.S.C. § 636m(g); *see* Business Loan Program Temporary Changes; Paycheck Protection Program—Loan Forgiveness Requirements and Loan Review Procedures as Amended by Economic Aid Act, 86 Fed. Reg. 8,283, 8,287–88

(Feb. 5, 2021). SBA then remits the appropriate amount to the lender—subject to any SBA review of the loan. 15 U.S.C. § 636m(c)(3); 86 Fed. Reg. at 8,288.

The simplified PPP loan application process, combined with the large number of first-time SBA borrowers and lenders who lacked familiarity with SBA rules and regulations, created a heightened risk of erroneous loan applications and approvals. To maintain the PPP's fiscal integrity, SBA implemented a system of PPP loan review. *See Gordon Coll.*, 2024 WL 3471261, at *2. If SBA determines during review that "an action by the borrower has resulted in its receipt of a PPP loan that did not meet program requirements," it denies the application for loan forgiveness. 86 Fed. Reg. at 8,285.

## II.    Celebrity's PPP Loan Applications and Procedural History

Plaintiff Celebrity is a New Jersey company that sells and leases luxury automobiles as one of a "corporate group" of entities. Complaint, Dkt. No. 2 at ¶¶ 2,9. Specifically, Celebrity is one of five entities that is completely owned and managed by Thomas Maoli. Administrative Record, CelebAR004275. As a member of a corporate group, members of the corporate group including Celebrity were eligible for a total of $4,000,000 in PPP second draw loans. Compl., Dkt. No. 1 at ¶¶ 2, 15.

Four members of the corporate group that included Celebrity of Springfield (the Plaintiff) applied for and received PPP second draw loans:

| **Corporate Group Entity Name** | **Loan Amount** | **SBA Loan #** |
|---|---|---|
| Celebrity Motor Cars, LLC | $2,000,000.00 | 8273148304 |
| **Celebrity of Springfield (Plaintiff)** | **$2,000,000.00** | **5886528506** |
| Celebrity Auto of Westchester, LLC | $772,897.50 | 8217868303 |
| Celebrity Italiano Auto Group, LLC | $290,240.00 | 4526398506 |
| **Total:** | **$5,063,137.50** | |

*See* CelebAR004277.

On January 12, 2022, Plaintiff Celebrity applied to SBA for forgiveness of the entirety of its $2 million PPP second draw loan (identified in the second row of the above table by the loan made on behalf of Celebrity of Springfield, the Plaintiff, with SBA Loan # 5886528506). Dkt. No. 1, ¶ 18. On September 1, 2022, SBA issued a final loan review that denied forgiveness of Celebrity's $2 million loan. *Id.* at ¶ 19; CelebAR004271. In its decision denying loan forgiveness, SBA stated:

> SBA has determined that the borrower was ineligible for the PPP loan amount received. The reason(s) for SBA's decision is as follows: After a review of the documentation provided, the SBA concludes that the Borrower business which is part of a corporate group has received more than $4,000,000 of 2nd draw PPP loans in the aggregate.
> Maoli et al is a "family" of 5 entities defined by 100% direct ownership and management control of Thomas Maoli (individual), as disclosed and attested to on borrowers 3511 and Schedule A Addendums. The family group has a total of 4 second draw loans totaling $5,063,137 in aggregate, which exceeds the $4,000,000 corporate maximum by $1,063,037. Therefore its 4th second draw loan, #5886528506 disbursed on 3/3/21 for $2,000,000, is Ineligible.

CelebAR004271.

On September 15, 2022, Plaintiff appealed that denial to SBA's Office of Hearings and Appeals ("OHA"), making two arguments. First, it argued that:

> The subject corporate group's having received $1,063,037 more than the corporate maximum of $4,000,000 constitutes an "Excess loan amount error" (specifically, a borrower error made in good faith) as defined under applicable regulations. Such applicable regulations provide that the appropriate decision as to the subject loan forgiveness application would be for the SBA to direct the lender to deny loan forgiveness **only** as to that part of the loan ($1,063,037) that exceeds the $4,000,000 corporate maximum. It is not appropriate for SBA to direct denial of forgiveness of the full $2,000,000.

Compl., Dkt. No. 1, ¶ 21 (emphasis in original); CelebAR000003 (emphasis in original). In support of this argument, Plaintiff referred to 85 Fed. Reg. 33012. CelebAR000004.

Second, Plaintiff referred to an SBA Procedural Notice:

> Borrower also respectfully refers the OHA to SBA Procedural Notice[] Control NO. 5000-20078 (effective January 15, 2021) (attached), the Subject of which is "Paycheck Protection Program Excess Loan Amount Errors." Applying reasoning similar to that of 85 Fed. Reg. 33012, this Notice states clearly that "[i]f the lender or SBA, as applicable, determines a borrower was ineligible for any portion of its loan amount, **forgiveness will be denied for the ineligible portion** and the borrower must begin making payments on the remaining loan amount." (Emphasis added.)

CelebAR000004 (emphasis in original).

On February 6, 2023, SBA OHA affirmed the decision to deny Plaintiff forgiveness of its $2 million second draw PPP loan. CelebAR004308-19. The SBA administrative law judge considered that Plaintiff asserted "seemingly contradictory reasons" for exceeding the $4 million second draw PPP loan cap, by suggesting it was either "not aware" of the maximum amount or exceeded that amount "by mistake,

13

having lost track of the amounts of loans taken out[.]" CelebAR004316. The administrative law judge noted her concern with Plaintiff's stated reasoning, adding that:

> I find it concerning that a corporation, seeking millions of dollars in funds from the public trust, would not inform itself of all requirements for eligibility for a PPP loan. Or, that the corporation would not responsibly keep track of the amounts of loans taken out by the various corporate entities.

CelebAR004317.

The administrative law judge recognized that, "SBA implemented rules specifically for corporate groups and placed the onus squarely on the borrower to know and abide by those rules." *Id*. She reasoned that "[i]t is the borrower's responsibility to know the loan requirements and ignorance of the requirements is no excuse." *Id*. Recognizing Plaintiff "had already received 4 First Draw loans and 3 Second Draw loans," and that it had to certify compliance with the requirements for each of the loans, the administrative law judge also questioned the candor of Plaintiff's previous certifications. *Id*.

The administrative law judge found, "to claim lack of knowledge of the eligibility requirement shows, at a minimum, an incredible lack of responsibility and good faith in applying for the PPP loans in question." *Id*. Recognizing the limited funds available for PPP loan recipients, the administrative law judge commented that if SBA forgave that portion of its second draw PPP loan, then "[u]ntold millions of dollars would be unavailable to other deserving small businesses" because borrowers

14

would be incentivized to apply for loan amounts exceeding the threshold. CelebAR004317-18.

The administrative law judge also found unpersuasive Plaintiff's argument that the language "if SBA determines that the borrower is ineligible for the loan amount or loan forgiveness amount claimed by the borrower, SBA will direct the lender to deny the loan forgiveness application in whole or part, as appropriate" somehow compels SBA to allow partial forgiveness of a loan. CelebAR004318 (*citing* 85 Fed. Reg. 33012). The administrative law judge found that "as appropriate" does not require SBA to forgive a portion of loan, and the facts did not warrant partial forgiveness where Plaintiff was not eligible for the loan in the first instance and did not withdraw or request cancellation on its own. *Id*. Considering these findings, the administrative law judge denied Plaintiff's appeal and held SBA committed no clear error of fact or law. *Id*.

On March 28, 2023, Plaintiff filed this Administrative Procedure Act lawsuit, challenging SBA's determination. Dkt. No. 1. SBA produced the administrative record and the matter is now ripe for summary judgment.

STANDARD OF REVIEW

I.    <u>Summary Judgment Standard</u>

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any, show that there is no genuine issue as to any

15

material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

When a party seeks review of agency action under the Administrative Procedure Act ("APA"), "[t]he entire case on review is a question of law, and only a question of law," which a court can resolve on the administrative record in the context of a motion for summary judgment. *Marshall Cnty. Health Care Auth. v. Shalala*, 988 F.2d 1221, 1226 (D.C. Cir. 1993); *see Am. Bioscience, Inc. v. Thompson*, 269 F.3d 1077, 1083–84 (D.C. Cir. 2001); *Univ. Med. Ctr v. Shalala*, 173 F.3d 438, 440, n.3 (D.C. Cir. 1999). In such cases, the district court generally does not resolve factual issues or duplicate agency fact-finding efforts, but instead functions as an appellate court addressing a legal issue. *See James Madison Ltd. by Hecht v. Ludwig*, 82 F.3d 1085, 1096 (D.C. Cir. 1996). For this reason, the normal standard of review for a summary judgment motion, which requires a district court to decide whether there is any "genuine dispute as to any material fact," does not apply. *See Conference v. Vilsack*, 684 F. Supp. 2d 135, 142 (D.D.C. 2010); *Sierra Club v. Mainella*, 459 F. Supp. 2d 76, 89-90 (D.D.C.2006). To the contrary, "the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." *Camp v. Pitts*, 411 U.S. 138, 142 (1973).

Summary judgment is thus the mechanism through which courts decide whether, as a matter of law, the agency action under review is supported by the administrative record and is otherwise consistent with the APA standard of review. *See Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 743-44 (1985) ("The task of the

reviewing court is to apply the appropriate APA standard of review . . . to the agency decision based on the record the agency presents to the reviewing court.").

## II.   APA Standard of Review

Generally, a court may only set aside an agency action under the APA if it is "arbitrary, capricious, an abuse of discretion, or not otherwise in accordance with law." 5 U.S.C. § 706(2)(A); *Chappell v. Wallace*, 462 U.S. 296, 303 (1983); *Town of Southold v. Wheeler*, 48 F.4th 67, 77 (2d Cir. 2022); *Karpova v. Snow*, 497 F.3d 262, 268 (2d Cir. 2007)). "The scope of review under the 'arbitrary and capricious' standard is narrow and a court is not to substitute its judgment for that of the agency." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 43 (1983); *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971); *Karpova,* 497 F.3d 262 at 267. A court  will uphold an agency action if  the agency has examined  the relevant  data  and articulated a satisfactory explanation for its action including a "rational connection between the facts found and the choice made." *Karpova,* 497 F.3d at 268.

Moreover, an agency is not required to "provide written findings about every piece of evidence it considered." *Dibble v. Fenimore*, 545 F.3d 208, 219 (2d Cir. 2008). Rather, "[a]gencies need only articulate a rational connection between the facts found and the choice made," and a court "will uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned." *Id*. (quoting *Bowman Transp., Inc. v. Ark.-Best Motor Freight System, Inc.*, 419 U.S. 281, 286 (1974)). In general, courts will only find an agency action arbitrary and capricious where the agency: 1) relied

on factors Congress did not intend it to consider; 2) entirely failed to consider an important aspect of the problem; 3) offered an explanation for its decision that runs counter to the evidence before the agency; or 4) is so implausible that it could not be ascribed to a difference in view or the product of agency expertise. *Town of Southold*, 48 F.4th at 77; *Karpova*, 497 F.3d at 268.

<u>ARGUMENT</u>

**The SBA Did Not Act Arbitrarily When It Denied Plaintiff's Application for Loan Forgiveness by Applying the Corporate Group Rule to Plaintiff's Loan Application That Exceeded the Threshold**

I.    The Administrative Law Judge Acted Reasonably by Denying Plaintiff's <u>Forgiveness Application for Its Loan that Exceeded the Threshold</u>

The Administrative Law Judge acted reasonably when she considered Plaintiff's arguments and denied their application for forgiveness of their loan that would have been unauthorized under the PPP. In the decision issued by the SBA's Office of Hearings and Appeals ("OHA"), the administrative law judge rejected Plaintiff's arguments and upheld the SBA's Decision to deny Plaintiff's application for loan forgiveness. *See* CelebAR004308-19.

Plaintiff's "seemingly contradictory reasons" for exceeding the $4 million second draw PPP loan threshold, which caused Plaintiff to seek and receive an unauthorized loan, do not support forgiveness by SBA. *See* CelebAR004316. Plaintiff asserted that it was either "not aware" of the maximum amount or exceeded that

amount "by mistake, having lost track of the amounts of loans taken out[.]" *Id.* Considering Plaintiff's assertions, the administrative law judge found that:

> I find it concerning that a corporation, seeking millions of dollars in funds from the public trust, would not inform itself of all requirements for eligibility for a PPP loan. Or, that the corporation would not responsibly keep track of the amounts of loans taken out by the various corporate entities.

CelebAR004317.

Against this backdrop, the administrative law judge recognized that, "SBA implemented rules specifically for corporate groups and placed the onus squarely on the borrower to know and abide by those rules." *Id.* She reasoned that "[i]t is the borrower's responsibility to know the loan requirements and ignorance of the requirements is no excuse." *Id.* The administrative law judge found, "to claim lack of knowledge of the eligibility requirement shows, at a minimum, an incredible lack of responsibility and good faith in applying for the PPP loans in question." *Id.* Recognizing the limited funds available for PPP loan recipients, the administrative law judge commented that if SBA forgave that portion of its second draw PPP loan, then "[u]ntold millions of dollars would be unavailable to other deserving small businesses" because borrowers would be incentivized to apply for loan amounts exceeding the threshold. CelebAR004317-18.

The administrative law judge also found unpersuasive Plaintiff's argument that the language "if SBA determines that the borrower is ineligible for the loan amount or loan forgiveness amount claimed by the borrower, SBA will direct the lender to deny the loan forgiveness application in whole or part, as appropriate"

somehow compels SBA to allow partial forgiveness of a loan in Plaintiff's case. CelebAR004318 (*citing* 85 Fed. Reg. 33012). The administrative law judge found that "as appropriate" does not require SBA to forgive a portion of loan, and the facts did not warrant partial forgiveness where Plaintiff was not eligible for the loan in the first instance and did not withdraw or request cancellation on its own. *Id.* Considering these findings, the administrative law judge denied Plaintiff's appeal and held SBA committed no clear error of fact or law. *Id.* Accordingly, this Court should uphold the SBA's determination because the administrative law judge's determination was not arbitrary and capricious.

II.    Plaintiff's Proposed Relief Is Not Supported
       By the Statutory Framework or the APA

Denying Plaintiff's application for forgiveness of its second draw PPP loan that exceeded the corporate threshold is reasonable and comports with the statutory framework. The Corporate Group Rule for Second Draw loans provides that "businesses that are part of a single corporate group shall in no event *receive* more than $4,000,000 of Second Draw PPP Loans in the aggregate." 86 Fed. Reg. at 3716 (emphasis added). Here, the parties agree that Plaintiff was part of a corporate group that applied for and received approximately $5 million in second draw PPP loans. At issue is Plaintiff's $2 million loan, which caused it to exceed the $4 million threshold. SBA did not act arbitrarily or capriciously when it denied forgiveness of the $2 million loan. Indeed, Plaintiff had complete control of the amount of the loan it sought in its

second draw PPP loan and could have applied for any eligible amount that kept it within the $4 million threshold—but it did not.

Plaintiff now seeks to have SBA modify its $2 million loan so that it can seek forgiveness of that portion of the loan below the threshold.  But this position ignores Plaintiff's responsibilities and conflicts with Congressional intent behind the PPP. As noted above, Congress enacted the PPP at "warp speed" to meet a national emergency and put the onus on borrowers to ensure compliance. In an effort to maximize the impact of the PPP, SBA extended the Corporate Group Rule to second draw loans to "promote the availability of PPP loans to the largest possible number of borrowers[.]" Business Loan Program Temporary Changes; Paycheck Protection Program Second Draw Loans, 86 Fed. Reg. 3712, 3716 (Jan. 14. 2021). Despite this statutory framework, Plaintiff seeks to have SBA shield Plaintiff from its own actions in seeking and obtaining a loan that violated the regulations. *See In re Gateway Radiology Consultants,* 983 F.3d at 1262 ("Congress gave the SBA only 15 days to issue rules, which is practically warp speed for regulatory action, a command that undoubtedly sprang from the felt need for quick action in light of the burgeoning economic crisis stemming from the pandemic.").

Plaintiff's suggested approach also ignores the scope of the PPP. The SBA guaranteed millions of loans worth hundreds of billions of dollars. Ultimately Congress authorized SBA to guarantee more than $813 billion in PPP loans, American Rescue Plan Act of 2021, Pub. L. No. 117-2, § 5001(d)(1), 135 Stat. 4, and nearly 12 million PPP loans were approved, without SBA having documentation in

its possession at the approval stage. Given this scope, SBA reasonably put the onus on the borrowers—rather than itself—to ensure compliance with the PPP.

Here, Plaintiff certified that its loan application complied with the PPP's requirements and should have known the amount of PPP second draw loans it sought. Plaintiff should have expected that SBA would deny its application for loan forgiveness, considering the regulations specifically provided that Plaintiff's failure to notify the lender that it "applied for or received PPP loans in excess of the amount" to "withdraw or request cancellation of any pending PPP loan application or approved PPP loan not in compliance" would "be regarded as a use of PPP funds for unauthorized purposes, and the loan will not be eligible for forgiveness." 86 Fed. Reg. at 3702.

Neither the PPP nor the APA compels SBA to modify Plaintiff's loan application in such a way to make it retroactively comply with the threshold. *See Ass'n of Priv. Sector Colls. & Univs. v. Duncan*, 110 F. Supp. 3d 176, 195 (D.D.C. 2015), *aff'd,* 640 F. App'x 5 (D.C. Cir. 2016) ("The APA does not demand the perfect at the expense of the achievable."). While the SBA is permitted to forgive a portion of a loan, nothing compels that action here, and the APA does not mandate such result. *See* 85 Fed. Reg. 33012 ("if SBA determines that the borrower is ineligible for the loan amount or loan forgiveness amount claimed by the borrower, SBA will direct the lender to deny the loan forgiveness application in whole or part, as appropriate").

Plaintiff asserts it either did not know if the corporate group rule requirements when it applied for its $2 million loan or made a mistake in determining the amount

22

of loans for which it applied.  Neither position suggests a retroactive modification of its loan application is appropriate here.  Plaintiff's *post-hoc* excuses do not warrant the SBA's modification of the loan application in such a way that would allow Plaintiff to receive some level of forgiveness, and to take advantage of its maximum possible loan application value. CelebAR004299("[T]he Borrower exceeded the corporate maximum by mistake, having lost track of the amounts of loans taken out across the various entities of the Borrower's corporate group"), CelebAR004316 (referencing that Plaintiff "was not aware" of the limit). The SBA thus did not act arbitrarily or capriciously when it denied Plaintiff's application for forgiveness.

Plaintiff's arguments fundamentally misconstrue the purpose of the corporate group rule and the PPP. The PPP is "a loan guaranty program, not a grant program." *Springfield Hosp., Inc. v. Guzman*, 28 F.4th 403, 423 (2d Cir. 2022). The $4 million corporate group threshold does not reflect a maximum allowable loan amount that SBA should attempt to provide to all borrowers even if a borrower fails to comply with the requirements of the second draw program. Logic counsels against this result as well, because a limited pool of money supported PPP and second draw loans and SBA specifically intended to make this pool of money available to the largest number of small businesses impacted by the pandemic—after the entirety of those pools of money were depleted.

Even if this Court finds that issuing partial forgiveness is a better approach, the APA does not support modification of SBA's administrative findings. *See, e.g., Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 43 (1983)

("The scope of review under the 'arbitrary and capricious' standard is narrow and a court is not to substitute its judgment for that of the agency."); *Keystone-Conemaugh Projects LLC v. United States Environ. Protection Agency*, 100 F.4th 434¸ 445 (3d Cir. 2024) ("[W]e must be mindful not to 'substitute [our] judgment for that of the agency . . . .'") (*citing Motor Vehicle Mfrs. Ass'n*). Accordingly, the SBA was not arbitrary and capricious when it denied Plaintiff's application for loan forgiveness where Plaintiff exceeded the $4 million corporate group threshold for second draw PPP loans.

<u>CONCLUSION</u>

For the foregoing reasons, the Court should grant Defendant's Motion for Summary Judgment, Deny Plaintiff's Motion for Summary Judgment, dismiss Plaintiff's lawsuit, and grant such other relief as is warranted.

Respectfully Submitted,

Dated: Newark, New Jersey
      October 30, 2024

PHILIP R. SELLINGER
United States Attorney

By:    */s/ Matthew J. Mailloux*
       MATTHEW J. MAILLOUX
       Assistant United States Attorney
       *Attorneys for Defendants*