# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| CELEBRITY OF SPRINGFIELD, LLC,<br><br>*Plaintiff,*<br><br>v.<br><br>THE UNITED STATES SMALL BUSINESS ADMINISTRATION; and ISABEL GUZMAN, in her official capacity as Administrator of the United States Small Business Administration,<br><br>*Defendants.* | Civil No. 2:23-CV-1720-WJM-CLW |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION
TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Thomas A. Gentile, Esq. (TG-6939)
**Wilson Elser Moskowitz Edelman & Dicker LLP**
7 Giralda Farms
Madison, New Jersey 07940
Phone: (973) 735-5785
Fax: (973) 624-0808

*Attorneys for Plaintiff*
Celebrity of Springfield, LLC                                                                December 10, 2024

# **TABLE OF CONTENTS**

**Page**

TABLE OF CONTENTS ................................................................................................... i

TABLE OF AUTHORITIES ............................................................................................ ii

PRELIMINARY STATEMENT ....................................................................................... 1

STATEMENT OF FACTS AND PROCEDURAL HISTORY ......................................... 2

THIS COURT'S STANDARD OF REVIEW AS TO THE SBA'S FINAL DECISION ...... 2

ARGUMENT ..................................................................................................................... 3

    I.    CELEBRITY'S EXCESS LOAN AMOUNT ERROR WAS NOT MADE IN BAD FAITH ................................................................................. 3

    II.    THE STATUTORY FRAMEWORK REQUIRES PARTIAL FORGIVENESS ............................................................................................ 5

    III.    WITH *CHEVRON* REPEALED, THIS COURT IS NOT TO DEFER TO THE SBA ......................................................................................... 8

CONCLUSION .................................................................................................................. 9

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Chevron U.S.A., Inc. v. NRDC, Inc.*,
  467 U.S. 837 (1984), *overruled by Loper Bright Enters. v. Raimondo*, 144 S. Ct. 2244 (2024) .................................................................................................1, 2, 3, 7, 8, 9

*In re Gateway Radiology Consultants, P.A.*,
  983 F.3d 1239 (11th Cir. 2020) ...........................................................................................6, 7

*GenOn REMA, LLC v. U.S. EPA*,
  722 F.3d 513 (3d Cir. 2013) ....................................................................................................8

*Keystone-Conemaugh Projects LLC v. U.S. EPA*,
  100 F.4th 434 (3d Cir. 2024) ...................................................................................................8

*Loper Bright Enters. v. Raimondo*,
  144 S. Ct. 2244 (2024) .................................................................................................2, 3, 7, 8

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*,
  463 U.S. 29 (1983) ...............................................................................................................8, 9

**Statutes**

5 U.S.C. § 706(2)(A) ......................................................................................................................3

15 U.S.C. § 636m(b) ......................................................................................................................6

**Rules**

Fed. R. Civ. P. § 56 ....................................................................................................................1, 3

**Regulations**

85 Fed. Reg. 33012 .......................................................................................................................7

**Other Authorities**

SBA Procedural Notice 5000-20078 ...............................................................................3, 4, 5, 7

Pursuant to Rule 56 of the Federal Rules of Civil Procedure ("Fed. R. Civ. P.") and all applicable Local Civil Rules of this Honorable Court, Plaintiff Celebrity of Springfield, LLC (hereinafter "Celebrity"), by its undersigned attorneys WILSON ELSER MOSKOWITZ EDELMAN & DICKER LLP, hereby respectfully submits this Memorandum of Law in opposition to the motion for summary judgment of the Defendants, the United States Small Business Administration (hereinafter the "SBA") and its Administrator, Isabel Guzman.

## PRELIMINARY STATEMENT

In their motion for summary judgment, the Defendants ask this Court to rubber stamp the SBA's deeply flawed final decision. Yet, with the Supreme Court having overturned the *Chevron* doctrine,[1] this Court is no longer obligated to show any deference to the SBA's specious action. In its final decision, the SBA denied forgiveness of the entirety of Celebrity's $2,000,000 second draw PPP loan, on the grounds that the loan put Celebrity's corporate group $1,063,037 over the group maximum. This harsh decision denied forgiveness of the $936,963 portion that did not exceed the group maximum, even though it is undisputed that Celebrity used this amount (indeed, the entire loan) for the precise purposes for which Congress enacted the governing statute[2] (including, most importantly, to maintain payroll during the COVID-19 pandemic).

Among its many serious flaws, the SBA's final decision blatantly defies applicable regulations that require partial forgiveness of loans that cause a maximum loan amount to be exceeded. The SBA says that it may pick and choose whether to grant such partial forgiveness; but with *Chevron*'s demise, this Court cannot ignore that the governing regulations employ mandatory language, thereby *requiring* the SBA to grant partial forgiveness in cases such as this.

---

[1] *See Chevron U.S.A., Inc. v. NRDC, Inc.*, 467 U.S. 837 (1984), *overruled by Loper Bright Enters. v. Raimondo*, 144 S. Ct. 2244 (2024) (Roberts, C.J.).

[2] *See* Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), P.L. 116-136 (2020).

1

The SBA's final decision also plays fast and loose with the notion of bad faith. Applicable guidance requires that a borrower must have made a "knowing misstatement" in order for the SBA to deny the partial forgiveness that the regulations require. Although the administrative record contains zero evidence that Celebrity exceeded the group maximum knowingly (rather than inadvertently), the SBA's final decision attributes bad faith to Celebrity where none exists. This was an arbitrary and capricious action by the SBA that this Court cannot abide.

The Defendants conclude their summary judgment brief with a last-ditch plea for judicial deference to the SBA's final decision. But any case law that calls for such deference cannot escape the taint of the now-discarded *Chevron* doctrine. Absent *Chevron*'s contrived standard of deference, the Administrate Procedure Act ("APA") requires this Court to squelch the SBA's spurious final decision as an arbitrary and capricious agency action. For these reasons, this Court should deny in its entirety the Defendants' motion for summary judgment.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

In the interest of brevity, Celebrity respectfully incorporates by reference the Statement of Facts and the Procedural History set forth in Celebrity's Memorandum of Law in support of Celebrity's own motion for summary judgment (ECF Doc. 23-1), as set forth fully in this brief.

## THIS COURT'S STANDARD OF REVIEW AS TO THE SBA'S FINAL DECISION

One of the several ways in which this is an important case of first impression concerns the applicable standard of review. Interwoven throughout the Defendants' brief are citations to caselaw that predates the Supreme Court's rejection of the *Chevron* doctrine in *Loper Bright*. Such caselaw, explicitly or implicitly, incorporates a deferential standard of review of agency decisions, the underlying basis of which is the now-discarded *Chevron* doctrine. Recognizing that "*Chevron*'s fictional presumption of congressional intent was always unmoored from the APA's demand that courts exercise independent judgment in construing statutes administered by

2

agencies," the Supreme Court in *Loper Bright* held that henceforth, "[c]ourts must exercise their independent judgment in deciding whether an agency has acted within its statutory authority, as the APA requires." *Loper Bright*, 630 U.S. at 2273. Therefore, APA itself governs this Court's review of the SBA's final decision in this case. Caselaw that predates *Loper Bright*, meanwhile, must be disregarded to the extent that any such caselaw incorporates expectations of deference that emanate from the now-repudiated *Chevron* doctrine.

As to the governing standard under the APA itself, 5 U.S.C. § 706(2)(A) provides that a court can set aside an agency decision if the agency's decision was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." On the Defendants' motion for summary judgment, it is the Defendants who bear the burden of establishing that the SBA's final decision in this case was not "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Id*. As the Supreme Court has set forth in *Loper Bright*, this Court is to exercise its independent judgment in so deciding, without deference to the SBA's decision.

## ARGUMENT

Pursuant to Rule 56 of the Fed. R. Civ. P., and for the reasons set forth herein, this Court should deny in its entirety the Defendants' motion for summary judgment.

### I.

### CELEBRITY'S EXCESS LOAN AMOUNT ERROR WAS NOT MADE IN BAD FAITH

The Defendants' motion for summary judgment must be denied because the SBA's final decision improperly imputed to Celebrity a lack of good faith that is wholly absent from the administrative record. In doing so, the SBA's final decision flat-out ignored the precisely on-point SBA Procedural Notice 5000-20078, which expressly anticipates partial loan forgiveness when a borrower inadvertently exceeds the maximum loan amount.

3

The SBA's final decision baselessly assumes that Celebrity acted in bad faith when Celebrity exceeded the applicable corporate group maximum. The SBA's final decision goes so far as to say that for Celebrity "to claim lack of knowledge of the eligibility requirement shows, at a minimum, an incredible lack of responsibility and good faith in applying for the PPP loans in question." CelebAR004317. In making this statement, the SBA's final decision impugns Celebrity with insinuations of bad faith without citing any evidence in the administrative record suggesting that Celebrity might possibly have acted in bad faith. That is (of course) because the administrative record contains zero evidence of any such bad faith. In fact, Celebrity's stated reasons for having exceeded the applicable corporate group maximum (that Celebrity either was not aware of the maximum amount or exceeded that amount "by mistake, having lost track of the amounts of loans taken out") speak directly to the *inadvertence* of Celebrity's having exceed the corporate group maximum (not any bad faith). CelebAR004316. Celebrity should not be denied partial loan forgiveness when the administrative record contains no evidence whatsoever that Celebrity ever acted in anything other than good faith.

This is especially true since the SBA's own procedural guidance anticipates that PPP borrowers will make such good faith mistakes, explicitly calling for partial loan forgiveness in such situations. SBA Procedural Notice 5000-20078 (Jan. 15, 2021) concerns "excess loan amount errors," defined as "a borrower or lender error[3] made in good faith that caused a borrower to receive a PPP loan amount that exceeds the borrower's correct loan amount under the CARES Act and the

---

[3] Pursuant to the CARES Act, there are in fact three parties to the second-draw loan that resulted in Celebrity inadvertently exceeding its corporate group maximum: Celebrity itself (the "borrower"); Valley National Bank (the "lender"); and the SBA (which guaranteed and ultimately was to grant forgiveness). The involvement of a third-party private bank as the "lender" heightens the possibility of inadvertent error among the three parties. SBA Procedural Notice 5000-20078 explicitly recognizes this, in its discussion of a "lender error."

4

Economic Aid Act." As to forgiveness, SBA Procedural Notice 5000-20078 explicitly provides that in the case of "a borrower receiving a larger PPP loan than the borrower was eligible to receive, the lender must issue a decision to SBA denying forgiveness for the amount that exceeded the borrower's correct maximum loan amount."

The very existence of a Procedural Notice addressing such "excess loan amount errors" establishes that the CARES Act's statutory framework anticipates that such good faith errors by borrowers will happen. Under SBA Procedural Notice 5000-20078, the opposite of such an "excess loan amount error" is a loan procured by "a knowing misstatement," which "may result in additional action, such as charges for fraud." CelebAR000012. In this case, the SBA's final decision leapt to the conclusion that Celebrity had acted in bad faith, despite there being zero evidence in the record of Celebrity ever having made a requisite knowing misstatement. The SBA thereby improperly conflated Celebrity's exceeding the corporate group maximum "by mistake" into a supposed "incredible lack of responsibility and good faith." Such an approach eviscerates utterly the very notion of an "excess loan amount error," by which the SBA is supposed to be guided under SBA Procedural Notice 5000-20078. Under the standard set forth in the APA, this was an arbitrary and capricious agency action that this Court must reverse.

## II.

### THE STATUTORY FRAMEWORK REQUIRES PARTIAL FORGIVENESS

The Defendants are wrong in their assertion that the statutory framework supports denial of the partial loan forgiveness that Celebrity seeks. *See* ECF Doc. 24-1 at 20-23. Rather, the provisions of the CARES Act concerning loan forgiveness make clear that the SBA's denial of forgiveness of the portion of a loan *below* the corporate group maximum — which funds were indisputably used for covered costs, including payroll — contravenes the statutory purpose.

5

The Defendants suggest that Celebrity's mistake in inadvertently exceeding the corporate group maximum somehow deprives "the largest number of small businesses impacted by the pandemic" from receiving funds from "a limited pool of money supported by PPP." ECF Doc. 24-1 at 23. Yet, this argument is wholly academic, because the SBA proffers no evidence that any qualifying small businesses (ever in the history of the PPP program) were turned away from receiving PPP money due to the funding pool being depleted. Contrarily, the SBA's denial of forgiveness of the portion of Celebrity's second draw loan below the maximum wreaks consequences in the real world that contravene the statutory purpose. There is no dispute in this case that Celebrity used all the PPP funds that it received to cover costs authorized under the CARES Act (most importantly, payroll costs). *See* 15 U.S.C. § 636m(b). The CARES Act (and its forgiveness provisions) had no purpose more fundamental than to provide businesses with funds to continue to maintain payroll during the COVID-19 pandemic (rather than lay off workers due to those businesses being closed). The SBA's final decision as to Celebrity (denying forgiveness of all of the loan that put the corporate group over its maximum, rather than granting partial forgiveness as to the amount below that maximum) punishes a small business that used PPP funds exactly as the CARES Act intended: to maintain payroll in the pandemic.

The Defendant's remaining arguments as to a supposed "statutory framework" wholly ignore this underlying statutory purpose. Instead, the Defendants seek to impose a draconian interpretation of the regulations implementing the PPP Program. The Defendants argue that this Court should construe those regulations against Celebrity because the PPP program was implemented at "warp speed" in a "national emergency." ECF Doc. 24-1 at 21, quoting *In re Gateway Radiology Consultants, P.A.*, 983 F.3d 1239, 1262 (11th Cir. 2020) (noting that "Congress gave the SBA only 15 days to issue rules . . . in light of the burgeoning economic crisis

6

stemming from the pandemic"). Such arguments must be disregarded, because the Eleventh Circuit in *Gateway Radiology* credited such arguments only in the context of applying the now-repudiated "*Chevron* framework to determine whether an agency exceeded its statutory authority." *Id*. at 1255. With *Chevron* now consigned to the ash heap of history, this court is to interpret these regulations not with deference to the SBA, but rather simply by reading what they say.

The regulations could not be more clear. 85 Fed. Reg. 33012 addresses forgiveness in cases in which the "SBA determines that a borrower is ineligible for a PPP loan," as follows:

> [I]f SBA determines that the borrower is ineligible for the loan amount or loan forgiveness amount claimed by the borrower, SBA will direct the lender to deny the loan forgiveness application in whole or in part, as appropriate.

This regulation's mandatory language ("SBA **will** direct the lender") belies the Defendants' argument that "[w]hile the SBA is permitted to forgive a portion of a loan, nothing compels that action here." ECF Doc. 24-1 at 22. The same is true of SBA Procedural Notice 5000-20078 (*supra*), which also uses mandatory language when providing guidance as to "excess loan amount errors." CelebAR000010-13. Specifically, this Procedural Notice provides that "[i]f the lender or SBA, as applicable, determines a borrower was ineligible for any portion of its loan amount, **forgiveness will be denied for the ineligible portion** and the borrower must begin making payments on the remaining loan amount." CelebAR000012 (emphasis added).

In disregard of both the CARES Act's statutory purpose and the foregoing mandatory regulations, the SBA acted arbitrarily and capriciously (and contrary to law) when it issued its final decision denying forgiveness of the portion of Celebrity's second draw loan that did not exceed the applicable corporate group maximum. Under the APA (as set forth in *Loper Bright*), this Court must therefore deny in its entirely the Defendants' motion for summary judgment.

7

### III.

### WITH *CHEVRON* REPEALED, THIS COURT IS NOT TO DEFER TO THE SBA

The Defendants conclude their brief with a plea for this Court to apply a deferential standard to the SBA's final decision. Specifically, the Defendants implore that "[e]ven if this Court finds that issuing partial forgiveness is a better approach, the APA does not support modification of SBA's administrative findings." ECF Doc. 24-1 at 23. The problem is that the caselaw that the Defendants cite in support of this proposition is irredeemably tainted by the now-repudiated *Chevron* doctrine. Meanwhile, the pre-*Chevron* caselaw that Defendants cite serves actually as a vivid example of a court exercising its authority to overturn an improper agency, when not burdened by *Chevron*'s imposition of deference.

The Defendants cite *Keystone-Conemaugh Projects LLC v. U.S. EPA*, 100 F.4th 434, 445 (3d Cir. 2024) (internal punctuation omitted) for the proposition that a court "must be mindful not to substitute [its own] judgment for that of the agency." Yet, when setting forth this deferential standard, *Keystone-Conemaugh* relies upon *GenOn REMA, LLC v. U.S. EPA*, 722 F.3d 513, 525 (3d Cir. 2013), which deferred to the agency only after a full-blown *Chevron* analysis.[4] This demonstrates that the taint of *Chevron* is not readily removable from any discussion of deference in caselaw that predates *Loper Bright*.

Meanwhile, the Defendants cite *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) — a case that predates *Chevron* — for the proposition that "[t]he scope

---

[4] In addition, *Keystone-Conemaugh* was a Court of Appeals' direct review under the Clean Air Act of extremely intricate environmental regulations (proposed nitrogen oxide emission limits for coal-fired electric generating units equipped with selective catalytic reduction controls operating in Pennsylvania) (*see id*. at 441). Such highly technical environmental regulations certainly fall more within agency expertise than the issues in this case, which concern straight-forward interpretations of the CARES Act and the regulations implementing it.

8

of review under the 'arbitrary and capricious' standard is narrow and a court is not to substitute its judgment for that of the agency."  Yet, this quote is merely a small part of a much larger (pre-*Chevron*) standard, under which Supreme Court in *Motor Vehicle Mfrs. Ass'n* forcibly and unhesitatingly held that the National Highway Traffic Safety Administration had "failed to offer the rational connection between facts and judgment required to pass muster under the arbitrary-and-capricious standard" when that agency took certain action regarding passive seat belts.  This pre-*Chevron* case thus demonstrates that in the absence of *Chevron*'s imposed deference, courts can and will take agencies to task for improper actions.  With *Chevron* now repealed, this Court is free to hold that the SBA's final decision in this case was an arbitrary and capricious action.

## CONCLUSION

For all the foregoing reasons, this Honorable Court should deny in its entirety the motion for summary judgment made by the Defendants, the United States Small Business Administration and its Administrator, Isabel Guzman.

Respectfully submitted,

**WILSON ELSER MOSKOWITZ EDELMAN & DICKER LLP**

By:        /s/ Thomas A. Gentile
        THOMAS A. GENTILE

Thomas A. Gentile (TG-6939)
*An Attorney Admitted to Practice before this Honorable Court*

7 Giralda Farms
Madison, New Jersey 07940
Phone:  (973) 735-5785
Fax:  (973) 624-0808

*Attorneys for Plaintiff*
Celebrity of Springfield, LLC

Dated: December 10, 2024

9